IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Habeeb Abdul Malik, #231677,  )
aka Ron Tearia Nicholas  )
 )
                    Plaintiff,  )          Civil Action No. 8:08-1886-RBH-BHH
 )
        vs.  )
 )          **REPORT AND RECOMMENDATION**
Robert Ward, Regional Director SCDC;  )          **OF MAGISTRATE JUDGE**
Lt. Smalls, BRCI; Lt. McCoy, BRCI;  Lt.  )          **AND ORDER**
 Roderick, BRCI; Lt. Simmons, BRCI;  )
 Sgt. Otis, BRCI; Sgt. McCants, BRCI;  )
 Sgt. Thomas, BRCI; Sgt. Murphy,  )
BRCI;  all sued in their personal  )
capacity,  )
 )
                    Defendants.  )
_____ )

        This matter is before the Court on the defendant's motion to dismiss pursuant to Fed.

R. Civ. 12(b)(6).  [Doc. 25.]  The plaintiff has pled a claim pursuant to 42 U.S.C. § 1983 for

excessive force and the South Carolina Tort Claims Act ("SCTCA"), for assault and battery.

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(f), D.S.C., this magistrate judge is authorized to review all pretrial

proceedings in prisoner petitions which do not challenge prison conditions, conditions of

confinement, or any other form of custody.

## STANDARD OF REVIEW

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

        The plaintiff brought this action *pro se*. This fact requires that her pleadings be

accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404

U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574

F.2d 1147 (4th 1978).  *Pro se* pleadings are held to a less stringent standard than those

drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less

stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The

mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the plaintiff's legal arguments for her. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

Moreover, the Court may rely upon allegations in the complaint and those documents attached as exhibits or incorporated by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007).

### DISCUSSION

## I.    Statute of Limitations: Section 1983 Claim

The defendants first contend that the plaintiff's 42 U.S.C. § 1983 claim is barred by the applicable statute of limitations. In his Complaint, the plaintiff alleges that his federal constitutional rights were violated on January 15, 2004, after he was involved in a riot or disturbance at Broad River Correctional Institution. This lawsuit, however, was not filed until more than four years later on May 16, 2008. [Doc. 1.]

The Fourth Circuit has held that "[t]he raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion

2

pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005); *see also Noonan v. Stock Building Supply, Inc.*, 2007 WL 1447709 (D.S.C. 2007). The applicable statute of limitations for the plaintiff's federal constitutional claim is three years. In determining the proper statute of limitations in a Section 1983 claim, the United States Supreme Court has found that the federal court should adopt the state law statute of limitations for personal injury. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985). Under South Carolina law, the statute of limitations for a personal injury claim is three years. *See* S.C. Code Ann. § 15-3-530(5). Consequently, it has been held that "[t]he statute of limitations for section 1983 causes of action arising in South Carolina is three years." *Hamilton v. Middleton*, 2003 WL 23851098, at *4 (D.S.C. 2003); *see also Simmons v. South Carolina State Ports Authority*, 694 F.2d 63, 64 (4th Cir. 1982) (under previous statute).

As stated, the defendants submit that the plaintiff's Section 1983 claim is barred by the statute of limitations because it arose more than three years prior to May 5, 2008, when the Complaint was filed.   From the face of the Complaint it is clear that the plaintiff knew or should have known of the alleged loss on January 15, 2004. As a result, the three year statute of limitations would have expired in January 2007, well over a year before this case was actually filed.

The plaintiff responds that the time for filing his Section 1983 claim was tolled, however, while he exhausted his administrative remedies.  Although it does not appear that the Fourth Circuit has addressed the issue, other circuits have concluded that federal courts should toll state statutes of limitations while inmates exhaust their administrative remedies under 42 U.S.C. § 1997e.  *See, e.g., Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir.2000); *Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir.1999).  Currently, it appears that this district agrees.  *See Peoples v. South Carolina Dept. of Corrections*, 2008 WL 4442583

3

(D.S.C. September 25, 2008). Accordingly, the undersigned will consider the three-year statute of limitations as having been tolled during the pendency of any attempts by the plaintiff to exhaust his administrative remedies. The period of any such pendency is not, however, fully apparent from the face of the Complaint. The parties have submitted certain grievance-related materials, which may be reviewed on this motion to dismiss because they are considered by the Court as having been essentially incorporated by reference into the Complaint. *See Tellabs, Inc.*, 127 S.Ct. at 2509. Notwithstanding, the Court believes that it is not possible to resolve the statute of limitations issue at this stage.

The defendants contend that, even assuming *arguendo* that the statute of limitations was tolled during the exhaustion of available remedies, the Complaint was filed out of time. The defendants have submitted evidence that the grievance process related to the incident at issue in this case was finally resolved on April 14, 2005, at the very latest. [Doc. 30, Attach. 2.] Accordingly, the plaintiff had until approximately April 14, 2008 to file his Complaint, even assuming that the statute of limitations was tolled. As stated, the Complaint was not filed until May 8, 2008.

The plaintiff has responded that the grievance finally resolved on April 14, 2008 was not related to the January 15 incident and that the allegations related to that January 15 incident were forwarded automatically to the "Grievance Branch" to be separately resolved.

The parties actually are in some agreement on this point. The plaintiff originally filed a Step 1 Grievance on January 30, 2004. That Grievance complained of two matters: (1) the January 15 incident, which is the subject of this lawsuit and (2) the involuntary shearing of the plaintiff's hair and beard. *Id.* The warden rejected the grievance as to both allegations. *Id.* Ex. A. The plaintiff then filed a Step 2 Grievance regarding the involuntary shearing allegation only. In that Grievance, he stated "[a]ll other allegations are of no

4

concern." *Id.* Ex. B.  The final determination issued by the defendants on April 14, 2005, was related to the shearing allegation only, as that was the only issue in the Step 2 Grievance.  As to this point, there is no dispute between the parties.

Where the parties disagree, however, is over whether or not the plaintiff intended to abandon the January 15 incident allegation, when he filed a Step 2 Grievance omitting it. The defendants contend that he did; the plaintiff, however, claims that he was told by the defendants to file a separate grievance concerning that incident and/or that the substance of the January 15 incident would automatically be referred to the "Grievance Branch" as an allegation of criminal activity.  (See Pl. Add. Resp. at 2.)  The dispute between the parties would be irrelevant except that the plaintiff contends, not only that the substance of his January 15 allegation was forwarded to the Grievance Branch, but that a final determination of that portion of his original Grievance was not made until August 2005.  (See Pl. Add. Resp. at 4, Ex. C.)  If the January 15 allegation was, in fact, automatically tracked into a separate grievance process, and if that Grievance was not resolved until August 2005, then the plaintiff would have had until August 2008 to file a lawsuit and his Complaint, therefore, would be timely.

The problem, however, is that the plaintiff has not produced any evidence of having filed a separate Grievance relating to the January 15 incident only or that the allegation was automatically referred to the Grievance Branch, as alleged.  As stated, he contends that the defendants required him to do so because, as a matter of policy, the inmates are only permitted to include one incident per Grievance, citing SCDC Policy "G.A. 1.12."  (Pl. Add. Resp. at 2.)  The plaintiff's representation is somewhat consistent with what the Court believes it has seen in other inmate suits.  Notwithstanding, there is no evidence that the defendants enforced such a policy against him, other than his own affidavit.  In fact, the Warden's response to the plaintiff's Step 1 Grievance dealt with both of the plaintiff's

allegations; said nothing about filing a separate Grievance for the January 15 incident or about referring the allegation to the Grievance Branch; and expressly dealt with the January 15 incident, concluding that it was "unsubstantiated and without merit." [Doc. 30, Attach. 2, Ex. A.]

The plaintiff concedes as much but argues that, notwithstanding the fact that the Warden dealt with the January 15 incident at Step 1, when the plaintiff attempted to file his Step 2 Grievance he was told that it could only include one incident.  The plaintiff further alleges that he was told that the substance of his January 15 allegations would be automatically "forwarded straight to the inmate Grievance branch" because it involved allegations of "criminal activity." (Pl. Add. Resp. at 2.)

At this stage, the Court must take these allegations as true – that the plaintiff was told that the January 15 incident would be separately processed by being sent directly to the Grievance Branch.  The remaining issue is whether that portion of the plaintiff's Grievance was processed before May 8, 2005, three years before the plaintiff filed his Complaint in this Court.  The Court does not believe that there is evidence of when it was actually resolved, assuming, as the Court must, that this separate Grievance existed at all.   The only Grievance documents, and related materials, before the Court, including those submitted by the plaintiff, relate to the Grievance originally initiated on January 30, 2004 and resolved on April 14, 2005.  That Grievance number is consistently identified as BRCI 551-04.  There is no separate Grievance related to the January 15 incident alone, as the plaintiff contends. The only other Grievance that the plaintiff has submitted was filed on November 18, 2004, and it expressly challenged what the plaintiff perceived as a delay in the processing of BRCI 551-04, the original Grievance:  "Please take notice that if I have not received a response to Grievance MSU 551-04 by November 23, 2004 I will hold all those who've hindered my access to the Courts liable via a federal civil rights action."  (See Pl. Add. Resp. at 4, Ex. B.)

6

That Grievance on its face does not purport to be a separate Grievance complaining of the January 15 incident.  It complains only of a delay in processing.

Even the document that the plaintiff contends is the final determination of his separate January 15 Grievance, issued in August 2005, expressly refers to BRCI 551-04 and states that Grievance was closed as of March 28, 2005.   (See Pl. Add. Resp. at 4, Ex. C.)  That document is not itself any final determination nor does it give credence to the plaintiff's theory of the case: that his January 15 allegation was automatically referred to the Grievance Branch and left unresolved until August 2005.   Exhibit C to the plaintiff's additional response does not support that position at all.

Ultimately, there remain issues of fact, not obviously apparent from the plaintiff's Complaint nor the documents incorporated by reference, which the Court does not feel comfortable resolving on a motion to dismiss.   A resolution of the statute of limitations issue, seems more appropriately considered at summary judgment.  It is possible that discovery could corroborate the plaintiff's contention that the January 15 allegation was separately processed from the BRCI 551-04 Grievance or at least that he was led to believe so and, further, that the resolution of that separate process was not made or communicated to the plaintiff until much later.  To resolve this matter before some discovery is permitted seems prejudicially premature to the plaintiff.

## II.    Statute of Limitations: State Law Claims

The plaintiff's state law claim for assault and battery, however, is out of time.  To the extent the plaintiff is seeking to sue the defendants in their individual capacities for assault and battery,[1] those claims are untimely as they were filed outside of the general 3-year

---

[1]  The South Carolina Tort Claims Act does not grant an employee "immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code § 15-78-70(b); *see also* S.C. Code § 15-78-60(17)

7

statute of limitations for such claims.  *See* S.C. Code § 15-3-530(5).  The plaintiff contends that the statute of limitations for this claim should be tolled, pursuant to S.C. Code § 15-3-40, during the pendency of his imprisonment.  That statutory provision, however, was amended to delete incarceration as a basis for tolling.  *See* S.C. Code § 15-3-530.  The amended version of Section 15-3-40 was in effect at the time the plaintiff's cause of action accrued in 2004.  *See id.*  Accordingly, there was no tolling of his assault and battery claim against the defendants in their individual capacities and that claim should be dismissed.

To the extent the plaintiff has sued the defendants in their official capacities pursuant to the South Carolina Tort Claims Act, the claim must be dismissed *without prejudice*.[2]  The circuit courts of South Carolina have exclusive jurisdiction over state-law claims against governmental entities pursuant to the South Carolina Tort Claims Act ("SCTCA").  *See* S.C. Code Ann. § 15-78-100(b).  The District of South Carolina has recognized this limitation on its jurisdiction, based both on Section 15-78-100 and Section 15-78-20(e), which, as stated, expressly preserves the State of South Carolina's Eleventh Amendment immunity from suit in federal court.  *See Stewart v. Beaufort County*, 481 F. Supp. 2d 483, 493 (D.S.C. 2007); *Smith v. Ozmint*, 2007 WL 858749, at *35 (D.S.C. March 20, 2007).  Accordingly, whatever claims the plaintiff has pursuant to SCTCA should be dismissed *without prejudice*.

─────────────────

(Supp.1997). Thus, a government employee can be personally liable for intentional torts such as assault and battery. *See Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671 (D.S.C.1995) (finding that the governmental entity is not liable under the SCTCA, and the employee is personally liable, when the employee's conduct falls within the exceptions listed in section 15-78-70(b)).

[2] SCTCA is the exclusive remedy for any tort committed by a government employee acting within the scope of his official duties.  "Employee" is defined by the SCTCA as "any officer, employee, or agent of the State or its political subdivisions, including elected or appointed officials, [and] law enforcement officers." S.C. Code § 15-78-30(c).

### III.   Unserved Defendants

Lastly, the defendants contend that defendants McCants, Murphy, Otis, Smalls, and Thomas should be dismissed because they have not been properly served with the Complaint.  The plaintiff concedes as much but has requested an extension of the time in which to serve the summons and complaint as he did not have proper addresses for those defendants. [Doc. 35.]

The Court will not dismiss these defendants but will extend the time in which the plaintiff has to serve the original summons and complaint by 90 days from September 16, 2008, when the summons would have initially expired.   The Court is satisfied that this is an acceptable remedy even though the request for an extension was made after the expiration of the 120 period, as provided by Rule 4(m), and even though good cause has not been specifically shown.  *See Henderson v. United States*, 517 U.S. 654, 658 n.5 (1996) ("The substance of this provision is retained in current Rule 4(m), which permits a district court to enlarge the time for service 'even if there is no good cause shown.'  Advisory Committee's Notes on 1993 Amendments to Fed. Rule Civ. P. 4.")

The plaintiff has also served discovery requests on the defendants, which, in part, seek information concerning the unserved defendants.  [Doc. 29.]  The defendants have requested that their obligation to respond to the discovery be stayed during the pendency of their motion to dismiss.  [Doc. 37.]  That request is now moot in light of this present Order.  Moreover, the defendants are directed to answer any served discovery requests related to the present whereabouts of the unserved defendants within 10 days.  *See, e.g., Barnes v. Denney*, 2008 WL 2357054, at *3 (E.D. Cal. 2008) (finding it appropriate that the "Plaintiff should first seek to uncover the identity of the unknown individual he seeks to name as an additional defendant by way of discovery interrogatories, requests for admission and/or requests for production of documents served upon defendants.")  As to all other discovery

served by the plaintiff, the defendants will have the full 30 days as provided for by the federal rules to make their response.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion to dismiss [Doc. 25] be DENIED in part and GRANTED in part; specifically, as to the plaintiff's federal claims the motion is DENIED.  As to the plaintiff's state law claims against the defendants in their individual capacities, the motion is GRANTED.  As to the plaintiff's state law claims against the defendants in their official capacities, pursuant to the South Carolina Tort Claims Act, the claims are DISMISSED *without prejudice*.

It is ORDERED that the plaintiff's motions to compel [Doc. 29] and to extend the time to serve the original summons and complaint [Doc. 35] are GRANTED.  It is ORDERED that the defendant's motion to stay [Doc. 37] is MOOT.   It is further ORDERED that  the defendants are directed to answer any served discovery requests related to the present whereabouts of the unserved defendants within 10 days of this Order and to respond to all other served discovery within 30 days of this Order.

IT IS SO RECOMMENDED AND ORDERED.

s/Bruce H.  Hendricks
United States Magistrate Judge

November 13, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

10

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

11