IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Habeeb Abdul Malik, #231677, ) <br> a/k/a Ron Tearia Nichols, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Robert Ward, *et al.*, ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No.: 8:08-cv-01886-RBH <br><br><br><br> **ORDER** |

This matter is before the Court upon Plaintiff's objections to the Report and Recommendation ("R&R") of United States Magistrate Judge Bruce Howe Hendricks.[1] In the R&R, the Magistrate Judge recommends that the Court grant the Defendants' Motion for Summary Judgment [Docket #90]. Alternatively, the Magistrate Judge recommends that, if the Court declines to adopt the recommendation concerning the applicable statute of limitations and exhaustion, this Court dismiss the forced haircut element of the Plaintiff's claim, but not the excessive force element. The Plaintiff filed timely objections, challenging only the Magistrate Judge's finding as to his claim involving excessive force. This matter is ripe for review.

**Procedural History and Factual Background**

The case was initiated on May 7, 2008, when the Plaintiff filed a *pro se* Complaint appearing to allege a 42 U.S.C. § 1983 excessive force claim in violation of the Eighth Amendment and a claim of "assault and battery" under the South Carolina Tort Claims Act. The Plaintiff also contends that his hair and beard were forcibly shaved in violation of his religious

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge Bruce Howe Hendricks for pretrial handling.

beliefs. On December 15, 2008, pursuant to a Motion to Dismiss [Docket #25], the Court entered an Order [Docket #47] dismissing the Plaintiff's claim of assault and battery. On June 3, 2009, the Defendants filed a Motion for Summary Judgment [Docket #90]. On July 2, 2009, the Plaintiff filed a response in opposition. On July 23, 2009, the Defendants filed a reply to the Plaintiff's response in opposition. Subsequently, the Plaintiff filed a sur reply, and the Defendants filed a reply to the Plaintiff's sur reply brief. On February 4, 2010, the Magistrate Judge issued her R&R recommending the Court grant the Defendants' Motion for Summary Judgment based on statute of limitations and exhaustion grounds. On February 10, 2010, the Plaintiff filed timely objections to the R&R, objecting to the dismissal of his claim involving excessive force. Similarly, the Defendants filed timely objections as a "precautionary measure" in case the Court "declines to adopt the recommendation based upon the statute of limitations and exhaustion of administrative remedies defenses." *Defendants' Objections,* p.1.

This matter is before the Court based on the following facts. On January 28, 2004, the Plaintiff filed a Step 1 Grievance, Number BRCI-551-04, concerning two matters: (1) excessive force allegedly used during a riot on January 15, 2004, and (2) a forced haircut, in derogation of his religious beliefs, on that same day. On May 13, 2004, when the Plaintiff had not received a response to his Step 1 Grievance, he filed a Notice of Appeal and submitted an unprocessed Step 2 Grievance dealing solely with the excessive force issue to the Administrative Law Judge.[2] Based on the Administrative Law Judge's subsequent Order of Dismissal, the Plaintiff claims that he believed the South Carolina Department of Corrections ("SCDC") had bifurcated his two

---

[2] The Plaintiff's unprocessed Step 2 Grievance stated: "Their has been no redress for the sadistic and malicious force used on me 1/15/04 while I was housed at the (BRCI). After I presented sufficient evidence to prove all such allegations." *Plaintiff's Objections,* Ex. A, p.2.

2

claims.[3]  On July 21, 2004, the Warden denied the Step 1 Grievance. On August 4, 2004, the Plaintiff received and signed the response from the Warden on his Step 1 Grievance. The Warden's response dealt with both the forced haircut issue and the excessive use of force. As to the excessive use of force issue, the response specifically stated: "Your allegations of excessive force are unsubstantiated and without merit." On August 5, 2004, the Plaintiff filed a responsive Step 2 Grievance, as required. However, in his Step 2 Grievance, the Plaintiff stated: "I am only concerned with the Hair issue. . . . All other allegations are of no concern." In a subsequent Grievance (Number MSU-243-04) concerning another matter, the Plaintiff again referenced his original Step 1 Grievance (Number BRCI-551-04) by stating "All other issues initially submitted in the step one were limited to this one particular [forced haircut] issue."

## **Standard of Review**

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a

---

[3] To support his position, the Plaintiff references the following language in the Order of Dismissal: "In this case, Appellant filed a grievance complaining of excessive force during an incident that occurred at Broad River Correctional Institution. The Department contends that, pursuant to SCDC Policy/Procedure GA-01.12 Inmate Grievance System, this grievance has been forwarded to the Division of Internal Affairs for investigation and that this investigation has not yet been completed." *Plaintiff's Objections,* Ex. C, p.1-2.

*de novo* review when a party makes only general and conclusory objections that do not direct the Court to a specific error in the Magistrate Judge's proposed findings and recommendations. *Orpiano v. Johnson,* 687 F.2d 44, 47-48 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.,* 416 F.3d 310, 315 (4th Cir. 2005).

## Discussion

### *Plaintiff's Objections*

According to the Plaintiff, "[t]he only objection I have to the Magistrate's Report is the dismissal of my claim involving excessive force." *Plaintiff's Objections,* p.1. Specifically, the Plaintiff appears to object to the Magistrate Judge's recommending summary judgment based on exhaustion and statute of limitations grounds.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a § 1983 action concerning conditions of his confinement. 42 U.S.C. § 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended § 1997e so that it now provides:

> "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

*Id.* § 1997e(a). The Supreme Court has held that the PLRA "seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford v. Ngo,* 548 U.S. 81, 93 (2006) (citing *Porter v. Nussle,* 534 U.S. 516, 524 (2002)). Accordingly, "[a]dministrative law . . . requir[es] proper exhaustion of administrative

4

remedies, which means using all steps that the agency holds out, and doing so *properly*." *Id.* at 90 (internal quotation marks omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by prisoners under any federal law. *Id.* at 90-91. Accordingly, before a prisoner may proceed with his claims in a federal court, he must first properly exhaust his administrative remedies available through the SCDC grievance policy/process.[4]

Importantly, the SCDC grievance policy provides that if, at the institutional level, the response to the grievance exceeds the established time limits, *the grievance will automatically proceed to the next level of appeal* where the Inmate Grievance Coordinator may respond to the prisoner and resolve his complaint. SCDC Policy GA-01.12 § 13.6; *see Plaintiff's Objections,* p.2. Only after completing the steps of the SCDC grievance process has a prisoner properly exhausted a claim under § 1983. *See* 42 U.S.C. § 1997e. Further, exhaustion is a prerequisite to suit that must be completed prior to filing an action. *Anderson v. XYZ Corr. Health Servs., Inc.,* 407 F.3d

---

[4] The Court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA-01.12. As noted in *Jones v. Kay,* No. 07-3480, 2007 WL 4292416 (D.S.C. Dec. 5, 2007), the time limits of this policy are summarized as follows:
> (1) an inmate must fill out a Form 10-5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;
> (2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;
> (3) the Warden should respond to the grievant in writing within forty (40) days;
> (4) the inmate may appeal by completing a Form 10-5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and
> (5) a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance plus five (5) days for the grievant to be served.

*See* SCDC Policy GA-01.12 (Inmate Grievance System). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. *Id.*

5

674, 677 (4th Cir. 2005). Thus, a SCDC prisoner must wait approximately 114 days from presenting his Step 1 Grievance to the prison to file a complaint in federal court. *See* SCDC Policy GA-01.12; *Jones v. Kay,* No. 07-3480, at \*5. If the prisoner has not received a response "[a]fter approximately 114 days have passed, he will have exhausted 'such administrative remedies as are available.'" *Id.* (citing 42 U.S.C. § 1997e(a)); *see, e.g., Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002).

In the instant matter, the Plaintiff failed to exhaust his administrative remedies. Specifically, the Plaintiff filed his Step 1 Grievance on January 28, 2004. The Plaintiff's filing of an unprocessed Step 2 Grievance to the Administrative Law Judge prior to the passing of 114 days and prior to receiving a response to his Step 1 Grievance was not proper exhaustion. On August 4, 2004, the Plaintiff received and signed a response to his Step 1 Grievance. In his Step 2 Grievance filed the next day, the Plaintiff explicitly abandoned his excessive force claim.[5]

The Plaintiff claims that, based on the Administrative Law Judge's Order of Dismissal, he did not reference his excessive force claim again in any Step 2 Grievances because he thought that the excessive force issue "was actually being processed separately and reviewed by their division of internal affairs division." *Plaintiff's Objections,* p.4. The Plaintiff alleges that he did not learn that both claims had been concluded in the August 4, 2004, response to his Step 1 Grievance until he received a memorandum from the Inmate Grievance Administrator on August 24, 2005, at which time it was too late to file a Step 2 Grievance on that issue. This argument is irrelevant, however, as the language in the Warden's response to the Step 1 Grievance clearly

---

[5] The August 5, 2004, Step 2 Grievance provided, in pertinent part: "*I am only concerned with the Hair issue.* As I am already housed in Administrative Segregation, I should not be forced to cut my hair . . . . *All other allegations are of no concern.*" *See* Coleman Affidavit, Ex. B. (emphasis added); *Plaintiff's Objections,* p.4.

indicates that a decision had been made on both the forced haircut issue and the excessive use of force.[6]

In sum, the Warden's decision on the Step 1 Grievance, which was subsequent to the Plaintiff's unprocessed Step 2 Grievance to the Administrative Law Judge, flatly rejects the Plaintiff's excessive force claim; thereafter, the Plaintiff made no further appeal, at Step 2 or otherwise, of that decision. Because the Plaintiff filed, at best, a premature Step 2 Grievance addressing the excessive force issue before the Warden had issued a determination on the Step 1 Grievance, **and** because the only responsive Step 2 Grievance before the Court expressly abandons the excessive force claim, the Court finds that the Plaintiff failed to exhaust his administrative remedies as to the excessive force claim.

Alternatively, assuming *arguendo,* that the Plaintiff's administrative remedies were exhausted by the passing of 114 days without receiving a response, the Plaintiff's excessive force claim is still barred by the statute of limitations. Section 1983 does not contain an express statute of limitations. Therefore, in determining the proper statute of limitations in a § 1983 claim, the United States Supreme Court has found that the federal court should adopt the forum state's statute of limitations for personal injury claims. *Wilson v. Garcia,* 471 U.S. 261, 276 (1985), *superseded by statute on other grounds* as stated in *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369 (2004); *see Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1161 (4th Cir. 1991) (stating that since "there is no federal statute of limitations applicable to suits under § 1983, it is the rule

---

[6] The Warden's response to the Plaintiff's Step 1 Grievance provides, in pertinent part: "You claim that your hair was forcibly cut in violation of many constitutional rights and against SCDC policy. Constitutionally, the SCDC is authorized to maintain order and discipline . . . . Policy is determined by the Director. Mr. Ozmint has the authority to change policy as situations may require, as he did in this case. Your allegations of excessive use of force are unsubstantiated and without merit." *Plaintiff's Objections,* Ex. Step 1 Grievance with Warden's Response.

7

that the applicable [statute of limitations] must be borrowed from the analogous state statute of limitations") (internal citations omitted). Under South Carolina law, the statute of limitations for a personal injury claim in three years. *See* S.C. Code Ann. § 15-3-530(5). Consequently, it has been held that "[t]he statute of limitations for section 1983 causes of action arising in South Carolina is three years." *Hamilton v. Middleton,* No. 4:02-1952-23, 2003 WL 23851098, at *4 (D.S.C. June 20, 2003); *see Hoffman v. Tuten*, 446 F. Supp. 2d 455, 459 (D.S.C. 2006).

The Plaintiff has argued that the statute of limitations was tolled while he exhausted his administrative remedies under the PLRA. The Fourth Circuit has not ruled that the statute of limitations for a § 1983 action is tolled during the period of PLRA exhaustion. Nonetheless, even if this Court tolled the statute of limitations during the period of exhaustion, the statute of limitations on the Plaintiff's excessive force claim still expired before he filed the present suit on May 7, 2008.

The Plaintiff filed his Step 1 Grievance on January 28, 2004. On May 21, 2004, 114 days had passed without the Plaintiff receiving a response to his Step 1 Grievance. Even assuming that as of May 21, 2004, he had exhausted his administrative remedies, the Plaintiff's lawsuit is still untimely. The Plaintiff did not file a complaint in federal court dealing with his excessive force claim until May 7, 2008, which is nearly a year beyond the three-year statute of limitations.[7] Thus, the Plaintiff's excessive force claim is barred by the statute of limitations.

---

[7] He arguably had until May 21, 2007, to file his lawsuit. Even if the exhaustion of the excessive force claim did not end until the Plaintiff received the Warden's response to the Step 1 Grievance on August 4, 2004, the Plaintiff still did not commence this action within three years of that date, which was August 4, 2007.

8

*Defendants' Objections*

"The Defendants submit that the Magistrate Judge erred in failing to conclude that the Plaintiff's excessive force claim fails because he has not presented any competent medical evidence of serious injury." *Defendants' Objections,* p.2. This Court finds that the Defendants' objections are without merit. *See Wilkins v. Gaddy,* 130 S. Ct. 1175 (U.S. 2010) (Excessive force claims are decided "based on the nature of the force rather than the extent of the injury.") Nonetheless, summary judgment in the Defendants' favor is appropriate because the Plaintiff's claims are barred by the statute of limitations and/or exhaustion.

Having thoroughly reviewed the entire record, the parties' objections, and the applicable law, the Court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. As such, the Court agrees with the recommendations of the Magistrate Judge and finds that dismissal is appropriate.

## Conclusion

Based on the foregoing, it is **ORDERED** that the Magistrate Judge's R&R is adopted and incorporated herein by reference, and the Defendants' Motion for Summary Judgment [Docket #90] is **GRANTED**.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge

Florence, South Carolina  
March 16, 2010